Medical Financing Merchant Agreement
Processing Center · P.O. Box 829   Springdale, AR 72765

## Merchant Information

PLEASE PRINT

| | |
|---|---|
| **Name (Merchant)** COSMETIC SURGERY MANAGEMENT LLC | **Doing Business As / Trade Name** SLEEK SURGICAL & MEDSPA |
| **Billing Address** 925 S. FEDERAL HWY | **Office Address** 3109 STIRLING RD, STE #100 |
| **City, State, Zip Code** BOCA RATON, FL, 33432 | **City, State, Zip Code** FT LAUDERDALE, FL, 33312 |
| **Merchant Specialty** Plastic Surgery | **Type of Business:** Not For Profit ☐  Professional Corp. ☐  LLC ☐  Partnership ☑  Corp. ☐  Sole Ownership ☐ |
| **Office Contact** JESSICA DAVIS | **Business Phone #** 954-961-3223   **Business FAX Phone #** 954-964-2719 |
| **Federal Tax I.D. #** 27-0876860   **State Tax I.D. #** L09000085760 | **# Locations** 5   **Yrs** <1   **E-Mail Address for Contact** JDavis@sleekmedspa.com |
| **Bank Reference** ANTHONY GINA   **Bank Phone #** 561-395-1621 | **Merchant Website** www.sleekmedspa.com |

## Owner/Officer Information

| | | |
|---|---|---|
| **Name** Dr. Jeffrey LaGrasso | **Date of Birth** | **Social Security Number** |
| **Owner** ☐  **Officer** ☑   **Title** Physician | **Home Phone #** | **E-Mail Address** |
| **Residence Address** 2700 N. Ocean Dr. APT# 301A | **City** West Palm Beach | **State** FL  **Zip Code** 33404  **How Long** |

## Rate Schedule

| Annual Enrollment Fee | Tier 1 Service Fee | Tier 2 Service Fee | Tier 3 Service Fee |
|---|---|---|---|
| $119.00 | 3.99% | 6.99% | 19.99% |
| | Promotional Rates Per Updates | Promotional Rates Per Updates | Promotional Rates Per Updates |

On behalf of the Company and myself, I have read the Important Disclosures and Terms of Offer on the enclosed/reverse, and I agree on behalf of the Company and myself that the Company and I will be bound as specified therein. I, individually, am a principal of the Company and will benefit from the transactions contemplated by this agreement and hereby guaranty payment of all amounts due to HC Processing Center accruing under this Agreement. You are authorized to check the Company's, and my, credit record and my employment history.

Signature of Authorizing Signatory: _[signed]_   Date 3/21/2012

Print Name: Jeffrey LaGrasso

Doc Type: Agreement
Merchant ID #: 17074
Last Name/Title: LaGrasso

Accepted for The Medical Financing Card By

Print Name and Title: Kayla Dickson (Credit Manager)
Date: 3/22/12

The Med Fin Card Use Only
First Name: Jeffrey
Tax ID #: 27-0876860
Account Manager: CCAS
Company: 228
Merchant #: 17074

Please complete and sign all pages of agreement.

Medical Financing Non-Recourse Merchant Agreement                    Updated 9/2011

## Medical Financing Non-Recourse Merchant Agreement

The undersigned ("Merchant") enters into this Agreement with Dent-A-Med Inc. ("the Company"), whose Corporate address is The Corporation Company, 1833 South Morgan Road: Oklahoma City, OK 73128, to accept any of the Company's credit cards (currently, "Medical Financing Card") as payment for authorized goods and/or services provided to holders of the cards ("cardholders"). This is a non-recourse agreement subject to the following terms and conditions:

1. **USE OF CHARGE SLIPS:** A charge slip must be accurately and fully completed by Merchant for each credit card sale and must include a valid charge authorization number. The Company may, at its sole discretion, pay Merchant for charges prior to the Company's receipt of a signed charge slip. However, the Company reserves the right to reject or to revoke prior acceptance of any charge if Merchant cannot provide an original, properly authorized charge slip upon request, or if proof of delivery of goods or services is not provided upon request.

2. **ACCEPTANCE OF CARDS:** Merchant agrees to accept the Company's credit cards in payment for goods or services and shall not discriminate as to price, service, or in any other way against any person using the Company's cards, nor shall Merchant extract any special payment arrangements on such sales. Merchant shall not have any claim against or accept payment from cardholders for goods or services charged on the Company's cards, unless such charge has been rejected or revoked by the Company; failure to comply herewith will make Merchant liable for cardholder's payment plus any applicable finance charges and fees.

3. **PAYMENT TO MERCHANTS:** Except as stated herein, the Company shall accept from Merchant all of the Company's credit card charges complying herewith and shall make payment, by Automatic Deposit (direct credit entry) to Merchant's account in the depository designated by Merchant in "Authorization for Automatic Deposit" below. The Company shall provide itemized statements reflecting charges submitted, net of applicable deductions. Service fees, credits requested by Merchant, revoked charges and any other amounts that may be due the Company from Merchant may be deducted from payments due Merchant, and may be offset by monies due Merchant as a result of any other agreement between Merchant and Company, or drafted from Merchant's account as authorized below. Should Merchant fail to immediately repay amounts due the Company, the Company may assess interest at 18% per annum on the amount due from the date the debt occurred until cured.

4. **RIGHT TO REJECT OR REVOKE CHARGE SLIPS:** The Company may reject or revoke prior acceptance of charges or credit applications submitted through Merchant in any of the following instances: a) the account is not in good standing; b) the authorization code is not valid; c) the charge does not represent a bona fide sale of goods or services or the charge or sale is disputed by the cardholder; d) a dispute between cardholder and Merchant remains unresolved after a reasonable resolution period; e) information on the credit application is fraudulent or unverifiable; f) the signature on the charge slip is not an authorized signature as indicated on the application for credit; or g) the properly completed application is not received by the Company within the requested time period; h) the charge represents goods delivered to a third party, residing at an address other than that of the cardholder, without prior notice to and approval of the Company. Such rejection or revocation may be made within a reasonable length of time following the Company's discovery of the problem.
In addition, Merchant shall be liable for any portion of services that have not been fully performed including applicable fees and finance charges, if any. In the event Merchant submits charges for services that require multiple treatments, visits, etc. Merchant warrants that Merchant will notify Company as soon as the Merchant is made aware of cancellation or discontinued service, if treatment ceases and/or if consumer did not receive all services for which cardholder was charged.

5. **FEES:** Merchant shall pay the Company an annual enrollment fee or a monthly participation fee as set forth in the Rate Schedule on the face of this agreement, due upon submission of this Agreement by Merchant. Merchant agrees to pay the Company a service fee equal to a percentage of each credit card sale as set forth in the Rate Schedule on the face of this Agreement; such payment shall be made by deduction of said service fee from amounts paid to Merchant by the Company

Initial: _____

6. **MERCHANT REPRESENTATIONS AND WARRANTIES:** Merchant represents and warrants that each transaction will be to a consumer for personal, family, or household purposes. Merchant represents that Applications for Credit will be available to the public without regard to race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to enter into a binding contract) and not in any manner which would discriminate against an applicant or discourage an applicant from applying for credit.

In addition, Merchant represents and warrants it shall be the responsible party for all actions taken by Merchant's employees and/or agents. Merchant shall be held responsible in the event of fraudulent submission of an application or any other unlawful action taken by or on behalf of the Merchant.

7. **APPLICATIONS:** In the event Merchant elects to maintain the Application for Credit, Merchant acknowledges Merchant's responsibility and warrants to maintain the application in a way that shall be in compliance with HIPPA and any other laws or regulations that may be in effect. In addition, Merchant agrees to maintain physical possession of the Application for a period of five years and to obtain Company's permission prior to disposal of any application. Merchant further agrees to provide a copy of Application to Company upon request and acknowledges that if the Application is unable to be provided, Merchant remains liable and the charge in question is subject to revocation.

8. **INDEMNIFICATION:** Merchant shall settle all disputes between Merchant and cardholder relating to any credit card sale. Merchant shall indemnify, defend and hold the Company harmless from any claims, losses, judgments, damages and expenses or other liabilities, including reasonable attorney fees and outstanding interest and other fees on unresolved disputed amounts which the Company may incur as a result of Merchant's breach of any part of this Agreement, and due to any claims made by cardholders relating to the quality and/or quantity of goods and/or services charged to cardholder's account by Merchant. Failure to respond to the Company's written notification of cardholder disputes within 10 days and to resolve such disputes within 45 days will result in revocation or rejection of charges.

9. **TERMINATION:** This Agreement shall continue until terminated by either party by giving the other party not less than 15 days written notice by certified mail, express delivery or by facsimile. Merchant's obligations on charges accepted by the Company prior to the effective date of the termination shall survive such termination, and the acceptance of charges after such notice shall be at the sole discretion of the Company on a case by case basis. Termination of this Agreement by either party does not relieve Merchant from obligations incurred by the acceptance of charges by the Company prior to receipt of notice and Merchant's indemnification obligations as provided in Section 8 hereof shall survive any termination of this Agreement and shall remain in effect until all unpaid accounts receivable generated by Merchant have been paid in full by the respective cardholders.

In the event Merchant materially breaches the Agreement, immediate termination may be warranted. If Company has evidence of, or reasonable belief of fraudulent or deceptive practices by the Merchant, the Company shall have the right to immediate termination of the agreement. Such termination shall be effective upon receipt of notice by the Merchant and notice may be shown via certified mail, express delivery, or by proof of receipt of facsimile.

In the event termination is warranted Company shall not be liable for any direct or indirect damages that Merchant may suffer as a result of any termination provided the termination is in accordance with the terms of this Agreement.

10. **ASSIGNMENT:** The parties recognize that the Company has contracted and/or may contract with First Electronic Bank (FEB) in Utah or any other bank (each, an "Eligible Assignee") whereby such assignee has purchased and/or may purchase accounts generated by the "The Medical Financing Card" or related private label cards. This Agreement shall cover all credit cards issued through or acquired by FEB or any other Eligible Assignee. All obligations for payments to Merchants, as reflected in Section 3 hereof, are assigned to and assumed by the applicable Eligible Assignee. The parties acknowledge that the Company, FEB and any other Eligible Assignee may assign their rights and/or obligations under this Agreement. This Agreement is not assignable or transferable by Merchant in whole or in part except with the prior written consent of the Company. Furthermore, Merchant agrees to send at least 30 days prior written notice of any change in Merchant's name or location, or any material change in ownership.

Initial: JL

**11. CONFIDENTIALITY:** Merchant shall not disclose the terms and conditions of this Agreement to any third party; provided however, that Merchant shall not be prohibited from disclosing any such information (i) to its employees, auditors and/or attorneys who need to know it; (ii) to the extent that disclosure is a requirement of law; or (iii) to the extent otherwise permitted by this Agreement or consented to by the Company

**12. WAIVER:** Failure by either party to enforce at any time any of the provisions of this Agreement shall not be a waiver of such provision or of the right thereafter to enforce such provision.

**13. SEVERABILITY:** If any provision of this Agreement is declared invalid by a tribunal, then such provision shall be deemed automatically adjusted to conform to the requirement for validity as declared at such time and, as so adjusted, shall be deemed a provision of this Agreement as though originally included. In the event that the provision invalidated is of such nature that it cannot be so adjusted, the provision shall be deemed deleted from this Agreement as though the provision had never been included. In either case, the remaining provisions of this Agreement shall remain in effect.

**14. ENTIRE AGREEMENT:** This Agreement contains the entire agreement between the parties hereto and supersedes all prior and contemporaneous agreements relating thereto. This Agreement shall not be amended or modified except by written notification to Merchant at least 30 days prior to the date such modification or amendment is to be implemented.

**15. REMEDIES FOR BREACH:** In the event, either party breaches this Agreement; such party shall be liable for the other party's reasonable attorney's fees and costs.

**16. GOVERNING LAW/JURISDICTION:** This Agreement shall be binding upon and serve to the benefit of Merchant and the Company, their respective representatives, successors and assigns, and shall be governed by and construed in accordance with the laws of the State of Oklahoma. Merchant agrees to submit to the jurisdiction of any court sitting in the County of Tulsa County, Oklahoma, or the forum in which Merchant is domiciled, at the sole discretion of the Company.

**17. AUTHORIZATION FOR AUTOMATIC DEPOSIT:** I hereby authorize the Company to initiate credit entries to the depository account named below; and to initiate debit entries to this same account for amounts due the Company for amounts deposited in error or resulting from credits issued on charges submitted from my office. I understand that this authority will remain in full force and effect until the Company has received written notification of its termination in such time and manner as to afford the Company and financial institution a reasonable opportunity to act on it. I authorize the financial institution named below to honor these credits and/or debits.

### Checking/Savings Account

| | | |
|---|---|---|
| Circle Account Type | Checking / Savings | |
| Bank Name | CHASE | |
| Bank Account # | 6377 | |
| Bank Routing # | 4131 | |
| Bank City/State | BOCA RATON, FL | |

Accepted and agreed.
COSMETIC SURGERY MANAGEMENT LLC

A - SLEEK SURGICAL & MEDSPA
Merchant Printed Name

_____        Jeffrey Lagrasse         3/21/2012
Authorized Signature            Print Name of Authorized Signer    Date

## Return/Credit Policy

The Medical Financing Card may assess a return fee for credits issued by the Merchant. The amount of the fee will be based upon the elapsed time between the posting of the original cardholder charge and our receipt of the credit as follows:

1. **0 to 45 Days:** No return fees will be assessed to the Merchant. Merchant depository account will be debited the amount deposited by Medical Financing Card for the charge being credited.

2. **46 to 75 Days:** A return fee equal to 6% of the requested credit amount will be assessed to the Merchant. Merchant depository account will be debited the amount deposited by Medical Financing Card for the charge being credited plus the return fee. Cardholder finance charges and fees will not be charged to the Merchant.

3. **Over 75 Days:** A return fee equal to 6% of the requested credit amount plus accrued cardholder finance charges and fees will be assessed to the Merchant. Merchant depository account will be debited the amount deposited by Medical Financing Card for the charge being credited plus the return fee and any cardholder interest and fees.

**Please make sure all credits on returned items are issued immediately with the Medical Financing Card.** As part of Regulation Z of the Fair Credit Billing Act, the merchant has 7 days after an item has been returned to issue a credit with the charged credit card company

I have read and understand the above return/credit policy.

_COSMETIC SURGERY MANAGEMENT, LLC_

Merchant Printed Name

_[signature]_

Authorized Signature

_3/21/2012_

Date

Updated 9/2011